## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

RTI Holding Company, LLC, and certain of its affiliates, as debtors and debtors in possession in the above-captioned  chapter  11 cases (the "Debtors"), have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 1007 of the Federal Rules of Bankruptcy Procedure, and Rule 1007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

.

Shawn Lederman has signed each set of the Schedules and Statements.  Mr. Lederman serves as the Chief Executive Officer of the Debtors.  In reviewing and signing the Schedules and Statements, Mr. Lederman has necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals.  Given the scale of the Debtors' business and the number of stores covered by the Schedules and Statements, Mr. Lederman has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements.  As a result, inadvertent errors or omissions may exist.  For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein.  While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist.  The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law.  In no event shall the Debtors or their officers, employees, agents, or professionals be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their officers, employees, agents, attorneys, or their professionals are advised of the possibility of such damages.

## Global Notes and Overview of Methodology

1.  **Description of Cases**.  On October 7, 2020, (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 8, 2020, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 68]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The information provided herein, except as otherwise noted, is reported as of the Petition Date.

2.  **Global Notes Control**.  These Global Notes pertain to and comprise an integral part of

DOCS_LA:333526.4

each of the Debtors' Schedules and Statements and should be referenced in connection
with any review thereof.  In the event that the Schedules and Statements conflict these
Global Notes, these Global Notes shall control.

3.    **Reservations and Limitations**.  Reasonable efforts have been made to prepare and file complete
and accurate Schedules and Statements; however, as noted above, inadvertent
errors or omissions may exist.  The Debtors reserve all rights to amend and supplement
the Schedules and Statements as may be necessary or appropriate.  Nothing contained in
the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an
admission of any kind with respect to these chapter 11 cases, including, but not limited
to, any rights or claims of the Debtors against any third party or issues involving
substantive consolidation, equitable subordination, or defenses or causes of action arising
under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable
bankruptcy or non-bankruptcy laws to recover assets or avoid transfers.  Any specific
reservation of rights contained elsewhere in the Global Notes does not limit in any
respect the general reservation of rights contained in this paragraph.

a.    **No Admission**.  Nothing contained in the Schedules and Statements is intended or
should be construed as an admission or stipulation of the validity of any claim
against the Debtors, any assertion made therein or herein, or a waiver of the
Debtors' rights to dispute any claim or assert any cause of action or defense
against any party.

b.    **Recharacterization**.  Notwithstanding that the Debtors have made reasonable
efforts to correctly characterize, classify, categorize, or designate certain claims,
assets, executory contracts, unexpired leases, and other items reported in the
Schedules and Statements, the Debtors nonetheless may have improperly
characterized, classified, categorized, or designated certain items. The Debtors
thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate
items reported in the Schedules and Statements at a later time as is necessary and
appropriate.

c.    **Classifications**.  Listing (i) a claim on Schedule D as "secured," (ii) a claim on
Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as
"executory" or "unexpired" does not constitute an admission by the Debtors of the
legal rights of the claimant or contract counterparty, or a waiver of the Debtors'
rights to recharacterize or reclassify such claim or contract.

d.    **Claims Description**.  Any failure to designate a claim on a given Debtor's
Schedules and Statements as "disputed," "contingent," or "unliquidated" does not
constitute an admission by the Debtor that such amount is not "disputed,"
"contingent," or "unliquidated."  The Debtors reserve all rights to dispute, or
assert offsets or defenses to, any claim reflected on their respective Schedules and
Statements on any grounds, including, without limitation, liability or
classification, or to otherwise subsequently designate such claims as "disputed,"
"contingent," or "unliquidated" or object to the extent, validity, enforceability,

priority, or avoidability of any claim. Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors. The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

e.     **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates.

f.     **Intellectual Property Rights**. Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

g.     **Insiders**. The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for the purposes of determining control of the Debtors, the extent to which any individual exercised management responsibilities or functions, corporate decision-making authority over the Debtors, or whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or any other purpose.

In the circumstance where the Schedules and Statements require information regarding "insiders", the Debtors have included information with respect to the individuals who the Debtors believe are included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.

4.     **Methodology**.

a.     **Basis of Presentation**. The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor. The Schedules and

Statements contain unaudited information that is subject to further review and potential adjustment. The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis except as noted on the applicable Schedules/Statements or herein.

b.    **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities and prepetition payments once.

c.    **Net Book Value**. In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtors. Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect estimates of net book values as of the Petition Date. Market values may vary, at some times materially, from net book values. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain the current market values of all their property. Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined. Amounts ultimately realized may vary materially from net book value (or whatever value was ascribed). Accordingly, the Debtors reserve all rights to amend, supplement or adjust the asset values set forth herein. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.

d.    **Property and Equipment**. Unless otherwise indicated, owned property and equipment are valued at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors. To the extent possible, any such leases are listed in the Schedules and Statements. Nothing in the Schedules and Statements is, or should be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

e.    **Consolidated Accounts Payable and Disbursements System**. The Debtors use a cash management system to collect funds from their operations and to pay operating and administrative expenses (the "Cash Management System"). The Cash Management System allows the Debtors to collect and transfer efficiently the cash generated by their business and pay their financial obligations. The Cash Management System has been in place for more than 10 years and is similar to those utilized by other corporate enterprises to collect, concentrate and disburse funds generated by numerous operating entities in a cost-effective and orderly manner. The Cash Management System is carefully managed through oversight procedures implemented by the Debtors' financial and accounting personnel.

The Cash Management System generally consists of a series of "zero-balance" accounts that sweep, each business day, into a main concentration account maintained by debtor Ruby Tuesday Inc. at Regions Financial Corporation.

f.  **Allocation of Liabilities**.  The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change.

g.  **Undetermined Amounts**.  The description of an amount as "unknown" is not intended to reflect upon the materiality of such amount.

h.  **Unliquidated Amounts**.  Amounts that could not be fairly quantified by the Debtors are scheduled as "unliquidated" or "unknown."

i.  **Totals**.  All totals that are included in the Schedules and Statements represent totals of all known amounts.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

j.  **Paid Claims**.  The Debtors have authority to pay certain outstanding prepetition payables pursuant to court order; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on account of prepetition payables.  Notwithstanding the *Interim Order (I) Authorizing Debtors to Pay Certain Prepetition Claims (A) Arising Under the Perishable Agricultural Commodities Act, (B) To Critical Vendors and Service Providers, and (C) Arising Under Section 503(B)(9) of the Bankruptcy Code; (II) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers; and (III) Granting Related Relief* [Docket No. 90] (the "Interim Critical Vendors/503(b)(9)/PACA Order"), the amount due to the Debtors' prepetition vendors may be scheduled at the amount outstanding as of the Petition Date, regardless of whether such claims have been settled and paid postpetition pursuant to the Interim Critical Vendors/503(b)(9)/PACA Order.  To the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Bankruptcy Court where such order preserves the right to contest.

k.  **Intercompany Claims**.  Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records.  The listing of any amounts with respect to such receivables and payables is not, and should not

be construed as, an admission of the characterization of such balances as debt, equity, or otherwise.

l.     **Guarantees and Other Secondary Liability Claims**.  The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G with respect to leases and Schedule H with respect to credit agreements for the affected Debtor or Debtors.  The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights to amend the Schedules and Statements if additional guarantees are identified.

m.     **Excluded Assets and Liabilities**.  The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred revenue accounts; and certain accrued liabilities including, but not limited to, employee benefits.  Other immaterial assets and liabilities may also have been excluded.

n.     **Liens**.  The inventories, property and equipment listed in the Schedules and Statements are presented without consideration of any liens.

o.     **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

p.     **Setoffs**.  The Debtors routinely incur setoffs and net payments in the ordinary course of business.  Such setoffs and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or disputes between Debtors and their customers and/or suppliers.  These normal, ordinary course setoffs and nettings are common to the restaurant industry.  Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction.  Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.  In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

5.    **<u>Specific Schedules Disclosures</u>**.

a.     **Schedule A/B, Parts 1 and 2 - Cash and Cash Equivalents; Deposits and Prepayments**.  Details with respect to the Debtors' cash management system and

bank accounts are provided in the *Motion of Debtors for Order under Sections 105, 345, 363, 364, 503, 1107 and 1108 of the Bankruptcy Code Authorizing (I) Maintenance of Existing Bank Accounts; (II) Continuance of Existing Cash Management System, Bank Accounts, Checks and Related Forms; (III) Continued Performance of Intercompany Transactions; (IV) Limited Waiver of Section 345(B) Deposit and Investment Requirements and (V) Granting Related Relief* [Docket No. 11] (the "Cash Management Motion") and any orders of the Bankruptcy Court granting the Cash Management Motion.  As described therein, the Debtors utilize a centralized cash management system.

Additionally, the Bankruptcy Court, pursuant to the *Interim Order (A) Approving the Debtors' Proposed  Adequate Assurance of Payment for Future Utility Services, (B) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (C) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (D) Granting Related Relief* [Docket No. 98], has authorized the debtors to provide adequate assurance of payment for future utility services.  Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

b.     **Schedule A/B, Part 4 - Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.**  Ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors, and may differ significantly from their net book value.

c.     **Schedule A/B, Part 7 - Office Furniture, Fixtures, and Equipment; and Collectibles**.  Dollar amounts are presented net of accumulated depreciation and other adjustments.

d.     **Schedule A/B, Part 11 - All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments.

*Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.*  In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with their customers and suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant. Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

e.     **Schedule D - Creditors Who Have Claims Secured by Property**.  Except as otherwise agreed pursuant to the *Interim Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and*

*Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 103] (the "Interim DIP Order"),  or other stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D. Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that hold a portion of the debt included in the secured facilities, only the administrative agents have been listed for purposes of Schedule D.

Goldman Sachs Specialty Lending Group, L.P. ("GSS") has filed UCC financing statements against substantially all of the assets of all fifty-one (51) Debtors. While the Debtors have listed the full amount of the GSS claims on each Schedule D (total of $42.7M), this claim amount is to be allocated across all fifty-one (51) Debtors.

f.      **Schedule E/F - Creditors Who Have Unsecured Claims.**

***Part 1 - Creditors with Priority Unsecured Claims***.  Pursuant to the *Order Authorizing the Payment of Prepetition Sales, Use and Franchise Taxes and Similar Taxes and Fees* [Docket No. 92] (the "Taxes Order"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition.

Furthermore, pursuant to the *Final Order Authorizing the Debtors to (I) Pay and/or Honor Prepetition Wages, Salaries, Commissions, Incentive Payments, Employee Benefits, and Other Compensation and Pay Temporary and Contract Workers; (II) Remit Withholding Obligations and Deductions; (III) Maintain Employee Compensation and Benefits Programs and Pay Related Administrative Obligations; and (IV) Have Applicable Banks and Other Financial Institutions*

*Receive, Process, Honor, and Pay Certain Checks Presented for Payment and Honor Certain Fund Transfer Requests* [Docket No. 279], the Debtors received final authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims***.  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records.  The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on the Debtors' consolidated books and records.  All of the known Schedule E/F,  Part 2 liabilities as of the Petition Date are listed on Schedule E/F, Part 2 of Ruby Tuesday, Inc. because that is the entity that pays such obligations.  However, the legal obligation to pay such debt may reside at other Debtors.  The listing of such liabilities on Schedule E/F, Part 2 of Ruby Tuesday, Inc. should not be construed as an admission that such obligations are liabilities of Ruby Tuesday, Inc.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors.  The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease.  In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases; *provided*, however, that claims relating to leases of nonresidential real property were calculated as follows:  (a) with respect to claims related to locations that were *open* as of the Petition Date, the claim amounts indicated are the Debtors' calculation of unpaid rent as of that date and are notated "RENT PAYABLE"; (b) with respect to claims related to locations that were *closed* as of the Petition Date, (i) claims relating to locations that are the subject of master leases consist of the Debtors' calculation of unpaid rent as of the Petition Date and are notated "PRE-PETITION RENT (FOR CLOSED STORES)"; and (ii) claims relating to locations that are the subject of individual leases consist of the Debtors' calculation of the lessor's potential claim up to the 'cap' described in section 502(b)(6) of the Bankruptcy Code and are notated "POTENTIAL CONTRACT REJECTION CLAIM."

As of the time of filing of the Schedules and Statements, the Debtors had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date.  Accordingly, the information contained in Schedules D and E/F may be incomplete.  The Debtors reserve their rights to amend Schedules D and E/F if and as they receive such invoices.

g.   **Schedule G - Executory Contracts and Unexpired Leases**.  While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable.  The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary.  Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights.  Such rights, powers, duties and obligations are not set forth separately on Schedule G.  In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements, amendments, and letter agreement, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G.  Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract.  The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.  The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

6.   <u>**Specific Statements Disclosures.**</u>

11

a.  **Statements, Part 2, Questions 3 and 4 - Payments to Certain Creditors**.  Prior to the Petition Date, the Debtors maintained a centralized cash management system.  Consequently, all payments to creditors and insiders listed in response to Questions 3 and 4 on each of the Debtors' Statements reflect payments made on a consolidated basis pursuant to the Debtors' cash management system described in the Cash Management Motion and are listed on the Statements of Ruby Tuesday, Inc.

b.  **Statements, Part 2, Question 6 - Setoffs**.  For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 4(p) of these Global Notes.

c.  **Statements, Part 6, Question 11 - Payments Related to Bankruptcy**.  Question 11 on all Statements reflects payments to professionals made on a consolidated basis from Ruby Tuesday, Inc.  The Debtors believe that it would be an inefficient use of the assets of the Debtors' estates for the Debtors to allocate these payments on a Debtor-by-Debtor basis.

d.  **Statements, Part 13, Question 27 - Inventories**.  The Debtors take inventory of product at their various store locations on a regular basis.  In an effort to reduce the amount of disclosures that would be otherwise applicable disclosures that could name numerous store-level managers, the Debtors have only listed the person who has had possession of the inventory records in response to Statements, Part 13, Question 27. Additionally, because the Debtors' typical practice is to value existing inventory at their warehouses on a daily cycle count basis, the value for purposes of Statements, Part 13, Question 27 is listed as of the date indicated and not necessarily when an inventory was conducted.

e.  **Statements, Part 2, Question 4 and Part 13, Question 30 - Payments, Distributions, or Withdrawals Credited or Given to Insiders**.  Distributions by the Debtors to their directors and officers are listed on the attachment to Questions 4 and 30 at Ruby Tuesday, Inc.  Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date. The amounts listed under Questions 4 and 30 reflect the gross amounts paid to such directors and executive officers, rather than the net amounts after deducting for tax withholdings.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

| | |
|---|---|
| Debtor | RT Michigan Franchise, LLC |
| United States Bankruptcy Court for the: | District of Delaware |
| Case number (if known) | 20-12470 |

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1:    Income

1. **Gross revenue from business**

   ☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|---|
| **FROM THE BEGINNING OF THE FISCAL YEAR TO FILING DATE:** | From 6/3/2020 | To 10/6/2020 | ☑ Operating a business<br>☐ Other | $859,589.29 |
| **FOR PRIOR YEAR:** | From 6/5/2019 | To 6/2/2020 | ☑ Operating a business<br>☐ Other | $7,751,856.63 |
| **FOR THE YEAR BEFORE THAT:** | From 6/6/2018 | To 6/4/2019 | ☑ Operating a business<br>☐ Other | $11,106,383.04 |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☑ None

## Part 2:    List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/1/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☑ None

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/1/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☑ None

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ☑ None

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

   ☑ None

Case 20-12470-JTD    Doc 5    Filed 11/17/20    Page 14 of 21

| Part 3: | Legal Actions or Assignments |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| MIDLAND MALL REALTY HOLDING, LLC V. RT MICHIGAN FRANCHISE, LLC<br><br>**Case number**<br>20207169CKC | LEASE LITIGATION | STATE OF MICHIGAN, MIDLAND COUNTY CIRCUIT COURT | ☒ Pending<br>☐ On appeal<br>☐ Concluded |

**8. Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☒ None

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☒ None

| Part 5: | Certain Losses |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☒ None

| Part 6: | Certain Payments or Transfers |
|---|---|

**11. Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☒ None

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☒ None

**13. Transfers not already listed on this statement**
List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.
Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☒ None

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of occupancy |
|---|---|
| RESTAURANT # 7043 GAYLORD<br>499 DICKERSON ROAD<br>GAYLORD, MI 49735 | From 11/8/2000    To 4/28/2020 |

Debtor    RT Michigan Franchise, LLC                    Case number (if known) 20-12470
          (Name)

| Address | Dates of occupancy | |
|---|---|---|
| RESTAURANT # 7044 CADILLAC<br>8711 EAST 34 ROAD<br>CADILLAC, MI  49601 | From  6/6/2001 | To  CURRENT |
| RESTAURANT # 7045 TRAVERSE CITY<br>1764 N US HWY 31<br>TRAVERSE CITY, MI  49686 | From  11/8/2001 | To  9/1/2019 |
| RESTAURANT # 7046 MIDLAND<br>6800 EASTMAN AVENUE<br>MIDLAND, MI  48642 | From  3/28/2000 | To  3/22/2020 |
| RESTAURANT # 7075 PORT HURON<br>4280 24TH AVE.<br>FT. GRATIOT, MI  48059 | From  3/28/2000 | To  8/27/2018 |
| RESTAURANT # 7084 MT. PLEASANT<br>1023 E PICKARD STREET<br>MT. PLEASANT, MI  48858 | From  5/14/2003 | To  4/21/2020 |
| RESTAURANT # 7087 CLARKSTON<br>6898 SASHABAW RD<br>CLARKSTON, MI  48348 | From  4/6/2005 | To  6/11/2020 |
| RESTAURANT # 7089 CHESTERFIELD<br>51295 GRATIOT AVE.<br>CHESTERFIELD TOWNSHIP, MI  48051 | From  3/28/2000 | To  6/17/2020 |
| RESTAURANT # 7090 BIG RAPIDS<br>15397 WALDRON WAY<br>BIG RAPIDS, MI  49307 | From  9/27/2005 | To  CURRENT |

### Part 8:    Health Care Bankruptcies

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
— diagnosing or treating injury, deformity, or disease, or
— providing any surgical, psychiatric, drug treatment, or obstetric care?
☑ No. Go to Part 9.

### Part 9:    Personal Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**
☑ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**
☑ No.  Go to Part 10.
☐ Yes.  Does the debtor serve as plan administrator?

        ☑ No.  Go to Part 10.
        ☐ Yes.  Fill in below:

### Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.
☑ None

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.
☑ None

Debtor    RT Michigan Franchise, LLC

(Name)

Case number *(if known)* 20-12470

---

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

---

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

21. **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

---

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes.  Provide details below.

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes.  Provide details below.

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes.  Provide details below.

---

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

---

26. **Books, records, and financial statements**

26a.  List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service | |
|---|---|---|
| ALBERT LEE<br>THE SIEGFRIED GROUP LLP<br>1201 N MARKET ST STE 700<br>WILMINGTON, DE  19801 | From  3/26/2020 | To  8/21/2020 |
| BRAD PETTY<br>FORMER EMPLOYEE<br>333 EAST BROADWAY AVE<br>MARYVILLE, TN  37804 | From  1/9/2019 | To  4/10/2020 |
| BRIAN JUDGE<br>FORMER EMPLOYEE<br>333 EAST BROADWAY AVE<br>MARYVILLE, TN  37804 | From  7/15/2019 | To  3/6/2020 |

| Name and address | Dates of service | |
|---|---|---|
| CHARLIE DEBBRECHT, RYAN SCHWERDTFEGER, & REESA MAY<br>INFOSYNC<br>1938 N. WOODLAWN, SUITE 110<br>WICHITA, KS 67208 | From 4/10/2019 | To CURRENT |
| MICHAEL DORSEY<br>HREI INC<br>2307 FENTON PKWY #107-245<br>SAN DIEGO, CA 92108 | From 7/17/2020 | To CURRENT |
| RAFAEL BEVERIDO<br>THE SIEGFRIED GROUP LLP<br>1201 N MARKET ST STE 700<br>WILMINGTON, DE 19801 | From 3/3/2020 | To 7/16/2020 |
| REBECCA MONTANGE MARTIN<br>FORMER EMPLOYEE<br>333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | From 4/4/2018 | To 1/22/2019 |

26b.  List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service | |
|---|---|---|
| AON CONSULTING INC.<br>ATTN RICH A WALSH<br>1100 REYNOLDS BLVD<br>WINSTOM SALEM, NC 27105 | From JAN 2005 | To PRESENT |
| CITRIN COOPERMAN & COMPANY, LLP<br>529 FIFTH AVE<br>NEW YORK, NY 10017 | From JAN 2019 | To PRESENT |
| CROWE LLP<br>ATTN REBECCA JORDAN<br>2095 LAKESIDE CENTRE WAY, STE 125<br>KNOXVILLE, TN 37922-6647 | From OCT 2011 | To PRESENT |
| INFOSYNC SERVICES LLC<br>ATTN DALE HOYER, CEO<br>1938 N WOODLAWN, STE 110<br>WICHITA, KS 67208 | From FEB 2019 | To PRESENT |
| KPMG LLP<br>PO BOX 120608<br>DEPT 0608<br>DALLAS, TX 75312 | From DEC 1999 | To MAR 2019 |
| LBMC, PC<br>PO BOX 1869<br>BRENTWOOD, TN 37024 | From MAR 2018 | To PRESENT |
| REBIS LLC<br>D/B/A PROPERTY WORKS<br>ATTN KIMBERLY FINNEGAN<br>DECATUR, GA 30030 | From AUG 2020 | To PRESENT |
| THE AEGIS GROUP, LLC<br>1102 18TH AVE SOUTH<br>NASHVILLE, TN 37212 | From APR 2012 | To PRESENT |
| THE SIEGFRIED GROUP<br>ATTN WILLIAM J ULRICH, VP<br>1201 N MARKET ST, STE 700<br>WILMINGTON, DE 19801 | From FEB 2020 | To PRESENT |

26c.  List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| CHARLIE DEBBRECHT, RYAN SCHWERDTFEGER, & REESA MAY<br>INFOSYNC<br>1938 N. WOODLAWN, SUITE 110<br>WICHITA, KS 67208 | |
| MICHAEL DORSEY<br>HREI INC<br>2307 FENTON PKWY #107-245<br>SAN DIEGO, CA 92108 | |

Debtor    RT Michigan Franchise, LLC                                                    Case Number (if known) 20-12470

(Name)

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
|  |  |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| AEGIS GROUP, LLC<br>ATTN RANDALL H ANTHONY<br>1102 18TH AVE SOUTH<br>NASHVILLE, TN  37212 |
| CITRIN COOPERMAN & COMPANY, LLP<br>529 FIFTH AVE<br>NEW YORK, NY  10017 |
| ESSENTIAL<br>902 CARNEGIE CENTER BLVD<br>STE 520<br>PRINCETON, NJ  8540 |
| GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P.<br>2001 ROSS AVENUE, SUITE 2800<br>DALLAS, TX  75201 |
| KPMG LLP<br>PO BOX 120754<br>DEPT 0754<br>DALLAS, TX  75312 |
| MARSH & MCLENNAN & COMPANIES<br>6160 GOLDEN HILLS DR<br>MINNEAPOLIS, MN  55416 |
| NATIONAL RETAIL PROPERTIES LP<br>450 S ORANGE AVE<br>STE 900<br>ORLANDO, FL  32801 |
| NRD CAPITAL<br>ATTN AZIZ HASHIM<br>4170 ASHFORD DUNWOODY RD, STE 390<br>STE 390<br>ATLANTA, GA  30319 |
| NRD RT30<br>ATTENTION: MANAGER<br>4170 ASHFORD DUNWOODY ROAD<br>STE 390<br>ATLANTA, GA  30319 |
| OHIO DEPARTMENT OF REVENUE<br>4485 NORTHLAND RIDGE BLVD<br>COLUMBUS, OH  43229 |
| ORION INVESTMENT AND MGMT LTD. CORP<br>200 S. BISCAYNE BLVD., 7TH FL<br>ATTN: KEVIN SANZ<br>MIAMI, FL  33131 |
| ORION NRD RUBY JV LLC<br>200 SOUTH BISCAYNE BLVD 7TH FL<br>C/O ORION INVESTMENT MGMT<br>MIAMI, FL  33131 |
| PENNSYLVANIA DEPARTMENT OF REVENUE<br>PO BOX 280414<br>HARRISBURG, PA  17128 |
| PENSION BENEFIT GUARANTY CORP<br>DIR. CORP. FINANCE & NEGOTIATION DEPT.<br>1200 K STREET NW<br>WASHINGTON, DC  20005 |
| PFG CUSTOMIZED DISTRIBUTION<br>245 NORTH CASTLE HEIGHTS AVE<br>LEBANON, TN  37087 |
| STORE CAPITAL<br>8377 E HARTFORD DR STE 100<br>SCOTTSDALE, AZ  85255 |

| Name and address |
| --- |
| TCW DIRECT LENDING LLC<br>200 CLARENDON ST, 51ST FL<br>BOSTON, MA 2116 |
| TCW DL VI FUNDING I LLC<br>200 CLARENDON ST, 51ST FL<br>BOSTON, MA 2116 |
| TWC SERVICES<br>2601 BELL AVENUE<br>DES MOINES, IA 50321 |
| ZIONSBANCORPORATION, N.A.<br>DBA CALIFORNIABANK & TRUST<br>ATTN: RONALD WON<br>2399 GATEWAY OAKS DR., SUITE 110<br>SACRAMENTO, CA 95833 |

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ None

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
| --- | --- | --- |
| VARIOUS STORE MANAGERS<br><br>**Name and address of the person who has possession of inventory records**<br>ELLEN CLARRY<br>333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | 9/29/2020 | $32,415.00 COST |
| VARIOUS STORE MANAGERS<br><br>**Name and address of the person who has possession of inventory records**<br>ELLEN CLARRY<br>333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | 10/6/2020 | $30,882.00 COST |

## 28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

☐ None

| Name | Address | Position and nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| AZIZ HASHIM | 333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | PRESIDENT, VICE PRESIDENT AND SECRETARY | |
| RT FRANCHISE ACQUISITION, LLC | 333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | MEMBER | 100 |
| SHAWN LEDERMAN | 333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | CHIEF EXECUTIVE OFFICER | |
| STEPHANIE MEDLEY | 333 EAST BROADWAY AVE<br>MARYVILLE, TN 37804 | CHIEF STRATEGY OFFICER | |

## 29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐ None

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
| --- | --- | --- | --- |
| BRIAN JUDGE | 5833 MILNE BLVD<br>NEW ORLEANS, LA 70124 | CHIEF FINANCIAL OFFICER | From 7/15/2019 To 3/6/2020 |
| RAFAEL BEVERIDO | 1201 N MARKET ST STE 700<br>WILMINGTON, DE 19801 | CFO - INTERIM | From 3/3/2020 To 7/16/2020 |

Debtor    RT Michigan Franchise, LLC                                Case number (if known) 20-12470
         (Name)

---

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ None

---

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None

| Name of the parent corporation | Employer identification number of the parent corporation. |
|---|---|
| Taxes are filed under consolidated entity "RTI Holding Company LLC & Subsidiaries" | 35-2604966 |

---

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None

Debtor    RT Michigan Franchise, LLC                                    Case number (if known) 20-12470
        (Name)

| Part 14: | Signature and Declaration |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11/16/2020.


✘  /s/ Shawn Lederman                                    Shawn Lederman
    Signature of individual signing on behalf of the debtor        Printed Name

    Chief Executive Officer
    Position or relationship to debtor


   **Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
   ☒ No
   ☐ Yes